IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUZZA HENDERSON, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 22-00129 |
| PHILADELPHIA HOUSING AUTHORITY et al., | |
| Defendants. | |

## OPINION

**Slomsky, J.**                                                                 **January 5, 2023**

### I.      INTRODUCTION

This case arises from allegations by pro se Plaintiff Yuzza Henderson ("Plaintiff") that

Defendants Philadelphia Housing Authority ("PHA"), and Bernadette Smith, Zachary McNeil,

Lauren Bishop, Stacey Collins, and Joshua McQuoid[1] (the "Individual Defendants"), collectively

referred to as "Defendants," violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the

Pennsylvania Human Relations Act ("PHRA"), and other laws.  (Doc. No. 9 at 1.)  Plaintiff claims

that Defendants discriminated and retaliated against her after she raised concerns with the human

resources department about her pay rate and other wrongdoings at work.[2]  (See id.)  She also

---

[1]  As of the date of the filing of the Amended Complaint, the Individual Defendants had different roles in their employment with PHA.  According to the Amended Complaint, Bernadette Smith was an Executive Assistant, Zachary McNeil was Operations Manager, Lauren Bishop was a Director, Stacey Collins was Manager of Human Resources, and Joshua McQuoid was Vice President of Human Resources.  (See Doc. No. 9 at 1.)

[2]  Although Plaintiff alleges that she was discriminated against, she fails to allege the protected class she was in, such as, for example, race, color, religion, sex, national origin, age, or disability.

alleges that Defendants took retaliatory adverse employment action against her, insulted her, and "isolated" her for reporting the wrongdoings.  (See id.)  Plaintiff filed an Amended Complaint on February 25, 2022.  (Doc. No. 9.)  Before the Court is Defendant's Motion to Dismiss the Amended Complaint.  (Doc. No. 13.)[3]

## II.    BACKGROUND

On January 16, 2022, Plaintiff instituted this action against Defendants by filing the form Complaint used for employment discrimination cases.  She attached to the Complaint a Right to Sue Letter, dated October 18, 2021, issued by the Equal Employment Opportunity Commission ("EEOC").   On February 25, 2022, Plaintiff filed the Amended Complaint.   (Doc. No. 9.) Thereafter, she sought leave to file a Second Amended Complaint ("SAC"), which was granted. (Doc. No. 31.)  She had until September 22, 2022 to file the SAC, but did not do so.[4]  Therefore,

---

[3]  Since Plaintiff is proceeding pro se, the Court has construed her Amended Complaint liberally and has attempted to identify the claims that appear to be alleged.  Because the Amended Complaint lacks the required clarity set forth in Federal Rule of Civil Procedure 8(a)(2) (a pleading must contain a short and plain statement of the claims showing the pleader is entitled to relief), this task has been demanding.

[4]  Plaintiff has been provided numerous opportunities to file a Second Amended Complaint and also has been granted extensions of time to seek legal counsel.  In this Court's October 4, 2022 Order denying Plaintiff another extension of time to file a Second Amended Complaint, the prior efforts to accommodate Plaintiff's requests are detailed:

> Plaintiff Yuzza Henderson ("Plaintiff") filed her Complaint (Doc. No. 1) on January 16, 2022.  In an Order dated January 26, 2022, the Court dismissed the Complaint without prejudice because "Henderson has failed to state a claim." (Doc. No. 5 at 6.)  Plaintiff was granted leave to file an Amended Complaint within 30 days of the Court's Order.  (See Doc. No. 6 at 1.)

> Plaintiff's Amended Complaint (Doc. No. 9) was filed on February 25, 2022 with a Motion for Leave to Proceed pro se (Doc. No. 11) and Motion to Appoint Counsel (Doc. No. 12).  (Doc. No. 9.)  On March 11, 2022, Defendant [PHA] filed a Motion to Dismiss the Amended Complaint.  (Doc. No. 13.)  Then, on March 14, 2022, the Court directed the Clerk of Court to place this case on the extranet to determine if

any lawyer would agree to represent Plaintiff.  (Doc. No. 14.)  The Court also ordered the Clerk to place this case in suspense.  (Id.)

On June 30, 2022, because no attorney had volunteered to represent Plaintiff, the Court informed Plaintiff she must represent herself and restored this case to active status.  (Doc. No. 20.)  On July 13, 2022, Plaintiff filed a Motion for a Continuance to obtain counsel (Doc. No. 22), and the Court granted the Motion in a July 14, 2022 Order.  (Doc. No. 26.)  In the Order, the Court informed Plaintiff that she had until August 3, 2022 to obtain counsel to represent her and granted Plaintiff leave to file a Second Amended Complaint ("SAC") by August 17, 2022.  (Doc. No. 26 at 1.)

The day before the August 3, 2022 deadline to obtain counsel, Plaintiff filed a Request for Further Extension of Time to Search for Legal Counsel.  (Doc. No. 28.) On August 4, 2022, the Court granted Plaintiff's Request and ordered that she had until September 8, 2022 to obtain counsel.  (Id.)  Plaintiff also was granted leave to file her SAC by September 22, 2022.  (Id.)  In that Order, however, the Court also informed Plaintiff that "[n]o further continuances will be granted."  (Id.)  By this time, Defendants' Motion to Dismiss had been pending for almost five months.

On August 16, 2022, although the Court had already done so, Plaintiff moved to extend the deadline to file her SAC to September 22, 2022.  (Doc. No. 30.)  In granting her Motion, the Court referred to the August 4, 2022 Order.  (Doc. No. 31.)  On September 8, 2022, because she could not find counsel to represent her in this case, Plaintiff filed a motion to proceed pro se and to reinstate her in forma pauperis request.  (Doc. No. 32.)  The Court granted the Motion and again reminded Plaintiff that [she] must file her SAC by September 22, 2022 or respond to Defendants' outstanding Motion to Dismiss.  (See id. at 2.)

Now, Plaintiff has filed a Motion for an Extension of Time to File a Second Amended Complaint.  (Doc. No. 34.)  For the following reasons, it will be denied.

First, she filed her extension Motion with the Clerk's Office on the September 22, 2022 deadline despite the Court granting her several extensions of time to file her SAC.  (See Doc. No. 34-1.)  No proposed Second Amended Complaint was attached to the Motion.  Second, in the August 4, 2022 Order, the Court informed Plaintiff that no further continuances would be granted.  (Doc. No. 31.)  Third, on March 4, 2022, Plaintiff filed a lawsuit against Defendants in state court.  (See Doc. No. 35-1.)  On August 10, 2022, Plaintiff filed a Praecipe to Reinstate the complaint in state court.  (See id. at 4.)  Fourth, as noted above, Plaintiff was granted several extensions of time by this Court during the pendency of her state lawsuit.  See, e.g., Lasher v. Rubinaccio, 860 F. App'x 821, 823 (3d Cir. 2021) (affirming district court's denial of continuance to amend complaint where court granted six requests in over a year and where the plaintiff had been litigating other matters).  Fifth, Plaintiff has not filed a SAC by September 22, 2022.

3

the Amended Complaint (Doc. No. 9) remains the operative Complaint in this case.  Plaintiff was

ordered to respond to the Motion to Dismiss the Amended Complaint by October 25, 2022.  (Doc.

No. 37.)  On October 25, 2022, Plaintiff filed a Response in Opposition to Defendant's Motion to

Dismiss.  (Doc. No. 38.)

To fully understand Plaintiff's claims, the Amended Complaint will be quoted from

extensively.[5]  In her Amended Complaint, Plaintiff states, using her own numbering system:

> **(1)** Yuzza Henderson (hereinafter π) **(2)** worked at Philadelphia Housing Authority
> (hereinafter Δ) **(3)** from March 24, 2017 **(4)** until September 25, 2020 **(5)** as a Case
> Manager **(6)** [which was the π's fourth position and **(7)** third promotion during her
> tenure] **(8)** [w]hich does not include added raises[.]  **(9)** However, during one of π's
> positions **(10)** she was not paid according to the allotted funding by said FSS
> Grant[.]  **(11)** Though she addressed the issue to HR [human resources] and **(12)**
> received an increase **(13)** it was still below the grant pay rate for an FSSC [Family
> Self-Sufficiency Coordinator 2018 at $69,000.]  **(14)** Throughout the π's tenure Δ
> made many false allegations 2018-2020 **(15)** retaliated **(16)** harassed **(17)** insulted
> with comments **(18)** isolated **(19)** when π reported **(20)** inconsistencies, **(21)** varies
> [sic] unprofessional conduct, **(22)** discrimination, **(23)** other unacceptable and
> unprofessional behavior.  **(24)** The HRD never investigated the complaints **(25)**
> submitted against the π.  **(26)** π was suspended, February 12, 2020, after reporting
> to the CEO **(27)** and without prior meeting **(28)** without pay.  **(29)** On March 4,
> 2020, Δ submitted the same false allegations [never investigated] to an outside
> government agency, e.g., Unemployment Compensation.  **(30)** π['s] last salary
> [was] $49,747.  **(31)** π was terminated for three reasons:  insubordination, neglect
> of duty and unsatisfactory job performance.  **(32)** π was still under [intermittent]
> FMLA **(33)** at the time of termination, **(34)** which began December 2019 and **(35)**
> was due to end in December 2020.  **(36)** π was also in a 5-year contractual
> agreement that was to result in [π] becoming a first-time homebuyer.  **(37)** π was
> represented and in [the] process of closing on the home through [the] PHA Family
> Self-Sufficiency Program[6] where she obtains her approved HUD [("United States

(Doc. No. 37 at 1-2.)  On the September 22, 2022 deadline for Plaintiff to file her SAC, Plaintiff
instead filed another Motion for an Extension of Time to File a Second Amended Complaint.
(Doc. No. 34.)  For reasons stated in the October 4, 2022 Order, the Court denied the Motion
and afforded her twenty-one (21) days "from the date of this Order to file a Response to the
Motion to Dismiss."  (Id. at 2.)

---

[5]  Plaintiff included a memo attached to the Amended Complaint titled "Opening Statement" in
which she provides "further explanation & Substantial Evidence."  (See Doc. No. 9-1.)

[6]  As explained in more detail, infra, the Family Self-Sufficiency ("FSS") Program is a program
administered by the United States Department of Housing and Urban Development ("HUD")

Department of Housing and Urban Development" or "Housing and Urban Development")]/PHA voucher to purchase a home--after achieving required years of Housing Counseling, Credit Counseling and other set goals such as obtaining a degree and maintaining employment **(39)** π applied several times, to other departments and positions but was blocked from interviewing with the department within the company. **(40)** π is a PHA Housing Choice Voucher Resident in good standing whose only objective was to excel, grow with the company and become a pillar in the communities. **(41)** π is a PHA PhillySeeds Scholarship Recipient since 2014-16, 2018-2021] Currently attends Drexel University Thomas R. Kline School of Law for her Masters of legal studies w/Concentration in Human Resource Compliance with an Expected graduation date of May 2022. She will pursue her Doctor in Law and Public Policy on May 25, 2022.

(Doc. No. 9 at 3.)

In the Opening Statement attached to the Amended Complaint, Plaintiff alleges that PHA started discriminating and retaliating against her in response to her reporting various instances of misconduct to Human Resources. Plaintiff describes these instances of misconduct as "numerous inconsistences," again using her own numbering system:

**(1)** client-complaints regarding promised relocation according to the Choice Neighbor Initiative Grant **(2)** Missing funds as per the FSS-Escrows accounts before the outsourcing to Compass/Redi, **(3)** issues related to PHA Partner Customer Bank Program for homeownership, **(4)** missing-files, shredded-files, **(e)** questionable tax-credit sites, **(5)** clients owing extreme back rents after recent move-ins, **(6)** suspicious rental activity, **(7)** unauthorized rental activities, **(8)** unauthorized PECO usage and **(9)** questionable shut-off notices, **(10)** mishandling of Septa merchandise and Septa Theft Cover-up, **(11)** Managerial and **(12)** Administrative mismanagement, and **(13)** misappropriations of government program funds **(14)** incorrect salaries per government grant allowance, etc.], **(15)** misuse of authority, **(16)** concerns with improper record management and **(17)** unethical conduct as per the handbook and other regulations. Moreover, areas concerning **(18)** nepotism/favoritism and **(19)** intentional lack of due diligence from the PHA HR Department [including "conveniently" removing and replacing an assigned Human Relations Specialist before an unknown five-day suspension without pay and deliberately false statements via the termination letter], **(20)** harassment and direct and indirect threats, **(21)** gatekeeping internal job opportunities. In addition to **(22)** other clever forms of retaliation, **(23)** questionable discriminatory behavior, **(24)** compromised Performance Evaluation, **(25)** patented file, and **(26)** high levels of micro-managing. **(27)** I was even refused

---

to "enable eligible families to achieve economic independence and self-sufficiency" in coordination with local public housing authorities. 42 U.S.C. § 1437u(a).

employee's tuition assistance for classes, later to reapply and learned a year later [from HR Department VP Assistant] I was eligible.  Furthermore, **(28)** I received other indirect threats.  **(29)** [M]y work was stolen, **(30)** suspicious computer hacks and/or back-to-back hard-drive crashes conveniently left with **(31)** unretrievable files, and **(32)** name-calling[,] **(33)** unauthorize[d] adjustment to time records as per specified administrative leave to name a few.  There were also **(34)** <u>countless false allegations in my employee's file</u> as a smokescreen to justify what happened during daily operations over the years.

(Doc. No. 9-1 at 5.)

The Amended Complaint apparently boils down to the following:  Plaintiff reported misconduct she observed while working for PHA to Human Resources and also informed Human Resources that she was being paid a lower salary than she was entitled to.  Because of her reports, PHA retaliated against her by forcing her to endure a hostile work environment and subjecting her and other employees to "questionable discriminatory behavior," name-calling, and other unidentified threats.  Additionally, Plaintiff alleges that her termination prevented her from closing on a house in violation of the terms of the "PHA FSS [Family Self-Sufficiency] Program."  (Doc. No. 9 at 6.)  It is necessary here to describe this Program in more detail.

The Family Self-Sufficiency ("FSS") Program was created by the Department of Housing and Urban Development ("HUD") pursuant to its authority under 42 U.S.C. § 1437u.  Section 1437u provides that:

The purpose of the Family Self-Sufficiency Program established under this section is to promote the development of local strategies to coordinate use of public housing and assistance under the certificate and voucher programs under section 8 [42 U.S.C. § 1437f] with public and private resources, to enable eligible families to achieve economic independence and self-sufficiency.

42 U.S.C. §1437u(a).[7]  Eligible families include those that participate in the Housing Choice

Voucher programs established under Section 8.[8]  It appears that Plaintiff was already participating

in the Section 8 Housing Choice Voucher program and was receiving rental subsidies.  Therefore,

she was eligible to participate in the FSS program.

Section 1437u also provides that "[e]ach public housing agency carrying out a local

program under this section shall enter into a contract with each leaseholder receiving assistance

---

[7]  24 C.F.R. § 984.102 provides:

> The objective of the FSS program is to reduce the dependency of low-income families on welfare assistance and housing subsidies.  Under the FSS program, HUD assisted families are provided opportunities for education, job training, counseling, and other forms of social service assistance, while living in assisted housing, so that they may obtain the education, employment, and business and social skills necessary to achieve self-sufficiency, as defined in § 984.103.

24 C.F.R. § 984.102.

[8]  As the Third Circuit Court of Appeals explained:

> Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, established a housing program to help eligible low-income families afford safe and sanitary housing.  [HUD] oversees the program, which is administered by local agencies in

> accordance with federal guidelines.

Henry v. City of Erie, 728 F.3d 275, 277 (3d Cir. 2013).  Under HUD's Housing Choice Voucher ("HCV") Program:

> HUD pays rental subsidies so eligible families can afford decent, safe, and sanitary housing.  The HCV program is generally administered by State or local governmental entities called public housing agencies (PHAs).  HUD provides housing assistance funds to the PHA.  HUD also provides funds for PHA administration of the program.
> . . .
> Families select and rent units that meet program housing quality standards.  If the PHA approves a family's unit and tenancy, the PHA contracts with the owner to make rent subsidy payments on behalf of the family.

24 C.F.R. § 982.1(a)(1)-(2).

under section 8 or residing in public housing administered by the agency, that elects to participate in the self-sufficiency program under this section."  Id. § 1437u(c)(1).  These contracts are called "Contracts of Participation" (or "CoP") and are entered into by an "eligible family that is selected to participate in an FSS program" and by the "[public housing authority] or owner that operates the FSS program in which the family will participate."  24 C.F.R. § 984.303(a).  "Each [FSS] family. . . shall be required to fulfill its obligations under the [CoP] not later than 5 years after entering into the contract."  42 U.S.C. § 1437u(c)(3).  In the Amended Complaint, Plaintiff does not describe the terms of her CoP.

But as an incentive to participate in the FSS Program, participating families are generally protected from rent increases based on increases in family income unless it exceeds a specified amount and are entitled to an escrow savings account in which the family shall earn interest based on "the adjusted income of the participating family and the amount of rent paid by a participating family."  Id. § 1437u(d).  In exchange, the FSS family is required to meet "specific interim and final goals by which the PHA or owner, and the family, measures the FSS family's progress towards fulfilling its obligations under the CoP and becoming self-sufficient."  24 C.F.R. § 984.303(b)(2).  A family receiving assistance through the HCV program under Section 8 must achieve a "final goal . . . that every member of the family become independent from welfare assistance before the expiration of the term of the CoP." [9]  Id.  Upon completion of the FSS, the FSS family is entitled to receive the "amount in an FSS escrow account in excess of any amount owed to the PHA . . . by the FSS family."  Id. § 984.305(c)(1).  While the form of FSS contracts are provided by HUD, local public housing authorities are free to create their own incentives to provide eligible families.  See 42 U.S.C. § 1437u(d)(3) ("The plan shall require the establishment

---

[9]   The CoP between Plaintiff and Defendant is not attached to the Amended Complaint.

of escrow savings accounts . . . and may include any other incentives designed by the public housing agency.").

Although the Amended Complaint does not have specific numbered counts, the Court has scrutinized the Amended Complaint and identified the following claims in the pleading:

a.  Discrimination under Title VII;

b.  Retaliation under Title VII;

c.  Hostile Work Environment under Title VII;

d.  Violation of Due Process Rights under the Fourteenth Amendment to the United States Constitution;

e.  Interference under the Family Medical Leave Act ("FMLA");

f.  Retaliation under the FMLA;

g.  Discrimination under the Pennsylvania Human Relations Act ("PHRA");

h.  Retaliation under the PHRA

i.  Hostile Work Environment under the PHRA;

j.  Wrongful Termination;

k.  Breach of Contract; and

l.  Defamation.

(See Doc. No. 9 at 3.)

On March 11, 2022, Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Evidence 12(b)(6).  (Doc. No. 13 at 9.)  In their Motion, Defendants argue that "Plaintiff has failed to state a claim upon which relief can be granted as to all counts in her Amended Complaint."  (Id. at 12.)  More specifically, Defendants submit that Plaintiff failed to exhaust her requisite administrative remedies, does not state a claim against Individual Defendants because

they are not subject to suit under Title VII, and fails to state a claim for discrimination, hostile work environment, retaliation, wrongful termination, and her other causes of action.  (See id. at 12-34.)  For reasons that follow, the Motion will be granted.

## III.  STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.   ANALYSIS

In their Motion, all Defendants argue that Plaintiff fails to allege any federal claim upon which relief can be granted.  (See Doc. No. 13-2 at 12-34.)  Individual Defendants contend further that they are not subject to suit under Title VII and Plaintiff has failed to exhaust against them the requisite administrative remedy prior to filing the Amended Complaint.  (See id. at 12-15.)  For reasons that follow, the Court agrees with Defendants' arguments and will dismiss all of Plaintiff's claims.[10]

---

[10]  The Amended Complaint (Doc. No. 9) suffers from the same defects the Court identified in its January 26, 2022 Memorandum (Doc. No. 5) in dismissing the original Complaint (Doc. No. 1), but with leave to amend.  In dismissing Plaintiff's Title VII discrimination and retaliation claims, the Court noted:

### A. Plaintiff Fails to State a Claim Against Defendant Philadelphia Housing Authority

Plaintiff fails to state a federal claim against Defendant Philadelphia Housing Authority, the only defendant named in the EEOC charge and the only Defendant to whom any actionable conduct is attributed in the Amended Complaint.  Consequently, for reasons that follow, each federal claim against Defendant PHA will be dismissed with prejudice.[11]  The Court will address seriatim each federal claim it discerns Plaintiff is alleging against PHA.

---

> The Complaint is devoid of any factual allegations.  There is no information concerning    . . . her membership in a protected class, or what discriminatory or retaliatory acts allegedly took place.  The Court is unable to evaluate Henderson's claims because it is not clear what happened to her, when it happened, and why she believes she was discriminated against or retaliated against.

> There are no facts to indicate that the PHA discriminated against or harassed Henderson based on her race, color, gender/sex, or membership in another protected class.  The same is true for Henderson's retaliation claims.  For Henderson to state a claim, she must describe the events that happened to her so it is clear why she believes she was discriminated against, forced to endure a hostile work environment based on harassment, and/or terminated because of her race, color, or gender, or as a result of retaliation.  Henderson's Complaint does not do this.  Accordingly, Henderson has failed to state a claim.

(Doc. No. 5 at 5-6.)  Regarding her PHRA hostile work environment and retaliation claims, the Court stated in the January 26, 2022 Memorandum:

> Henderson alleges only that she filed a charge with the EEOC and that she was terminated.  She does not provide any context for these allegations from which it can be inferred that her termination was motivated by retaliation. . . .  She provides no facts from which a causal connection could be inferred between her filing of the EEOC charge and her termination.

(Id. at 8.)

[11]  Plaintiff's state-law claims under the PHRA are assessed under the same framework as her Title VII claims to the extent the PHRA does not require a particular provision be interpreted differently.  See Jones v. SEPTA, 796 F.3d 323, 327 (3d Cir. 2015) ("[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently.") (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)).

### 1.  Discrimination under Title VII and the PHRA

Federal law prohibits employment discrimination based on race, color, religion, sex, sexual orientation, national origin, age, and disability.  See EEOC v. Allstate Ins. Co., 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a); 29 U.S.C. § 623; 42 U.S.C.§ 12112).  In general, to establish a prima facie case of employment discrimination, a plaintiff must show that:  (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Ali v. Woodbridge Twp. Sch. Dist., 957 F.3d 174, 180 (3d Cir. 2020) (citation omitted).  Although a plaintiff need not necessarily establish a prima facie case to survive dismissal for failure to state a claim, she still must "allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'"  Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (citation omitted) ("To defeat a motion to dismiss, it is sufficient to allege a prima facie case.  . . .  But it is not necessary.")

Here, the Amended Complaint fails to state a discrimination claim under both Title VII and the PHRA because Plaintiff does not meet the first element—that she is a member of a protected class.  She does not state whether she was being discriminated against based on race, color, religion, sex, sexual orientation, national origin, age, or disability.  Consequently, viewing the facts alleged in the Amended Complaint in the light most favorable to her, Plaintiff does not show that Defendant PHA took adverse employment action against her because of her membership in a protected class.  Accordingly, Plaintiff's Title VII and PHRA discrimination claims will be dismissed.

### 2.   Hostile Work Environment under Title VII and the PHRA

For a plaintiff to establish that she was subjected to a hostile work environment based on

her membership in a protected class, she must show that:

> 1) [she] suffered intentional discrimination because of [her membership in a
> protected class], 2) the discrimination was severe and pervasive, 3) the
> discrimination detrimentally affected [her], 4) the discrimination would have
> detrimentally affected a reasonable person in like circumstances, and 5) the
> existence of <u>respondeat</u> <u>superior</u> liability.

<u>Castleberry v. STI Grp.</u>, 863 F.3d 259, 263 (3d Cir. 2017) (quoting <u>Mandel v. M & Q Packaging</u>

<u>Corp.</u>, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted)).

Similar to her original Complaint and for reasons discussed above in dismissing claims

under Title VII and the PHRA, Plaintiff's Amended Complaint does not allege facts indicating

that Defendant PHA discriminated against or harassed her based on her race, color, gender/sex, or

membership in another protected class.  No facts are alleged to show that any discrimination was

based on a hostile work environment that was the result of severe and pervasive conduct by

Defendants.  Only mere conclusions are stated.  Therefore, Plaintiff's hostile work environment

claims under Title VII and the PHRA also will be dismissed for failure to state a claim.

### 3.   Retaliation under Title VII and the PHRA

A plaintiff properly alleges a retaliation claim if she "tender[s] evidence that:  '(1) she

engaged in activity protected by Title VII; (2) the employer took an adverse employment action

against her; and (3) there was a causal connection between her participation in the protected

activity and the adverse employment action.'"  <u>Kengerski v. Harper</u>, 6 F.4th 531, 536 (3d Cir.

2021) (quoting <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340-41 (3d Cir. 2006)).

As for the first prong—engaging in Title VII-protected conduct—Title VII prohibits an

employer from retaliating against an employee for opposing any act made unlawful by the

employment discrimination statutes, or because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under those statutes.  42 U.S.C. § 2000e-3(a).  The employee-plaintiff must "show that [s]he held 'an objectively reasonable belief, in good faith, that the activity [she opposed] is unlawful under Title VII.'"  Kengerski, 6 F.4th at 536 (quoting Moore, 461 F.3d at 341).

In the Opening Statement attached to her Amended Complaint, which is quoted above, Plaintiff alleges as her facts thirty-four "inconsistencies."  They include, for example, that she reported misconduct including "questionable discriminatory behavior," harassment, name-calling, and other references that appear to diminish pursuit of her legal career.  (See Doc. No. 9-1 at 5, 7.)  However, none of these facts specifically show that she engaged in activity protected by Title VII.  The closest she comes to protected activity is item 22 ("other clever forms of retaliation") and item 23 ("questionable discriminatory behavior").  These are conclusions and not plausible facts on which a court may conclude she engaged in protected activity.

Moreover, filing a complaint with the EEOC is an activity protected by Title VII.  See Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995) ("[I]t is settled that a cause of action exists pursuant to Title VII when an employer has retaliated against an employee for filing a charge with the EEOC.") (citation omitted).  Additionally, lodging concerns of discriminatory conduct with human resources also constitutes Title VII-protected activity.  See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 n.9 (3d Cir. 2007) ("Opposition to discrimination under the retaliation provision can take the form of informal protests of discriminatory employment practices, including making complaints to management.") (citation and internal quotation marks omitted).  On July 21, 2021, she filed a charge with the EEOC to investigate allegedly discriminatory actions by her employer under Title VII.  This filing was about ten (10) months

after she was terminated.  Accordingly, although Plaintiff engaged in protected activity in filing the EEOC charge, there was no adverse employment action against her in connection with that filing.

With respect to the second prong of retaliation, adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  The Third Circuit has extended the actions that fall within the ambit of "adverse employment actions" to include suspending an employee without pay.  See Remp v. Alcon Labs, Inc., 701 F. App'x 103, 107 (3d Cir. 2017) (citing Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001)).  Here, Plaintiff alleges that she was suspended without pay on February 12, 2020.  And while Plaintiff does not provide dates of when she reported the "inconsistencies" to human resources, she presumably did so while still employed by Defendant.  Therefore, the second element of retaliation is met here.

Plaintiff fails to establish, however, the third prong of retaliation—causation.  To show causation, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).  "She can meet this burden by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, . . . a pattern of antagonism, . . . or temporal proximity 'unusually suggestive of retaliatory motive' . . . ."  Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (citations omitted).  As for the last method of showing but-for causation, the Third Circuit explained that:

> [T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."  Moreover, causation, like any other fact, can be established from the evidence gleaned from the record as a

whole.   "[W]here the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence."

834 F.3d 417, 424 (3d Cir. 2016) (citations and footnotes omitted).

Here, regarding the causation factor, Plaintiff has not alleged facts showing that her protected activity was a but-for cause of her termination.   First, Plaintiff has not alleged any facts suggesting inconsistent explanations offered by Defendant PHA or any of her supervisors.   Second, there is no unusually suggestive timing between when Plaintiff filed an EEOC charge or allegedly engaged in any other protected activity and when she was terminated; she does not provide any dates on which she reported alleged misconduct to Human Resources.   The timing between Plaintiff's filing of her EEOC complaint and Defendant PHA's allegedly discriminatory conduct is not unusually suggestive and does not raise any such inference because she filed the EEOC complaint on July 21, 2021, which is almost ten months after she was terminated on September 25, 2020.   (See Doc. Nos. 9 at 5; 9-1 at 11.)   Without a concrete timeline showing when the actions against Plaintiff occurred in relation to her protected conduct, a causal connection has not been properly alleged.   Accordingly, Plaintiff has not established the third element of retaliation under Title VII and the PHA.   Thus, the Title VII and PHRA retaliation claims against Defendant PHA will be dismissed.

### 4.   Violation of Due Process Rights under the Fourteenth Amendment to the United States Constitution

Plaintiff claims that Defendant PHA violated her due process rights guaranteed by the Fourteenth Amendment to the United States Constitution[12] under 42 U.S.C. § 1983.[13]   This claim

---

[12]   The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."   U.S. CONST. amend. XIV § 1.

[13]   Section 1983 provides, in relevant part:

fails for two reasons.  First, a municipal subdivision is not a proper party in a Section 1983 action.

See, e.g., Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (concluding that a city

police department could not be sued because it is "a sub-unit of the city government").  Cf. Martin

v. Red Lion Police Dep't, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (holding that municipal police

department was "not a proper defendant in an action pursuant to 42 U.S.C. § 1983") (citing

Johnson, 834 F. Supp. at 878).  Therefore, Defendant PHA is not a proper defendant in Plaintiff's

Section 1983 claim and that claim against PHA will be dismissed.

Second, even if Plaintiff properly sued the City of Philadelphia rather than PHA, her

Section 1983 claim would still fail because she does not sufficiently allege a claim under Monell

v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  This Court has described Monell as follows:

> The gravamen of Monell and its progeny is that "recovery from a municipality is
> limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts
> which the municipality has officially sanctioned or ordered."  Pembaur v. City of
> Cincinnati, 475 U.S. 469, 480 (1986).  In other words, the constitutional deprivation
> must have its origin in the policy, custom, or deliberate indifference of the
> municipality, and liability based on the actions of city officials exists only where it
> can be shown that the officials acted in accordance with that policy, custom, or
> deliberate indifference.  See Monell, 436 U.S. at 694.  Moreover, municipalities
> cannot be held liable under Section 1983 for acts of its employees based on the
> doctrine of respondeat superior or for other forms of vicarious liability.  See id. at
> 692 (noting that the language of Section 1983 "cannot be easily read to impose

---

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State. . . subjects, or causes to be subjected, any citizen of the United
States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to
the party injured in an action at law, suit in equity, or other proper proceeding for
redress . . . .

42 U.S.C. § 1983.

In the Amended Complaint, using the Eastern District of Pennsylvania's standard form for an
employment discrimination case, Plaintiff asserts only that Defendant PHA "[v]iolated [her]
Constitutional Rights to Due Process."  (Doc. No. 9 at 3.)  But it is not clear whether Plaintiff
alleges a substantive or a procedural due process claim.  Regardless, since her allegations in the
Amended Complaint would not support either claim, they will be dismissed.

liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); see also Reitz v. Cnty. of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[M]unicipal liability simply cannot be predicated upon a showing of respondeat superior.").

Ewing v. City of Phila., No. 20-3170, 2021 WL 1581186, at *6 (E.D. Pa. Apr. 21, 2021) (Slomsky, J.).

Thus, under Monell, to state a claim against a municipality under Section 1983, a plaintiff must establish that (1) a constitutionally protected right has been violated and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference. See Monell, 436 U.S. at 694–95; Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).

There are a variety of ways a plaintiff may establish the existence of a municipal policy or custom to satisfy Monell. For example, a plaintiff can cite an official policy. See id., 436 U.S. at 690 (holding a municipality may be sued under Section 1983 when it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."); see also Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010) ("'Policy' includes official proclamations made by municipal decision makers with final authority . . . ."). A policy also may arise from the municipality delegating to employees the authority to set policy or from the municipality ratifying actions taken by employees without policymaking authority. See id. at 264.

Custom, on the other hand, "is defined as practices of state officials . . . so permanent and well settled as to virtually constitute law." Id. (citing Berg v. Cty. of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000)). A plaintiff may establish custom by specifically referring to "multiple incidents" implicating that a particular custom exists. See Harris v. City of Phila., 171 F. Supp. 3d 395, 401–02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons). A plaintiff may also establish custom through

a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right.  See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits against the Philadelphia Police Department for use of excessive force).

A plaintiff also may satisfy the second prong of Monell by showing that official policymakers were deliberately indifferent to known incidents of constitutional violations towards its inhabitants.  See City of Canton v. Harris, 489 U.S. 378, 388–92 (1989).  In the Third Circuit, to make a claim for deliberate indifference, a plaintiff must show that: "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (quoting Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011)).

Here, Plaintiff's claim under Monell of a violation of due process by PHA or the City of Philadelphia fails for several reasons.  First, she has not alleged facts that show a denial of due process, which is the constitutional claim.  Second, she does not identify any policy statements, regulations, ordinances, or decisions officially adopted and promulgated by Defendant PHA, nor does she allege any facts suggesting that Defendant PHA had been acting against her pursuant to a custom.  Furthermore, she does not establish that PHA was deliberately indifferent to a known constitutional violation.  For these reasons, her due process claim under § 1983 fails.

### 5.   Interference under the Family Medical Leave Act ("FMLA")

Construing the Amended Complaint liberally, Plaintiff apparently alleges that her rights under the FMLA also were violated.[14]  (See Doc. No. 9 at 3.)  The Third Circuit has held that:

> To make a claim of interference with her rights under the FMLA, Plaintiff must establish:
>
> > (1) . . . she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of . . . her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which . . . she was entitled under the FMLA.

Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017) (quoting Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citation omitted)).  "The FMLA is meant to prohibit employers from retaliating against employees who exercise their rights, refusing to authorize leave, manipulating positions to avoid application of the Act, or discriminatorily applying policies to discourage employees from taking leave."  Callison v. City of Phila., 430 F.3d 117, 120 (3d Cir. 2005).

In Callison, the Third Circuit held that the City of Philadelphia had not engaged in any of these prohibited acts since it "provided Callison with the entitlements set forth in the FMLA (e.g., a twelve-week leave and reinstatement after taking leave.")  Id.  Here, Defendant granted Plaintiff twelve months within which to exercise her medical leave.  She does not specify, however, how many weeks of unpaid medical leave Defendant PHA afforded her, how many weeks of leave she exercised, or whether she was currently exercising her medical leave benefits at the time of her termination.  (See Doc. No. 9 at 3); see also 29 U.S.C. § 2612 (providing that an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period").  Because

---

[14]  Specifically, Plaintiff asserts that she was "still under [intermittent] FMLA" starting from December 2019 and ending in December 2020 when she was terminated on September 25, 2020.  (Doc. No. 9 at 3.)

Plaintiff was provided her FMLA entitlements and was not denied any such entitlements, her FMLA interference claim will be dismissed.

### 6.   Retaliation under the FMLA

The Amended Complaint also appears to allege that Defendant PHA retaliated against Plaintiff for exercising her FMLA benefits.  Courts apply the <u>McDonnell Douglas</u> framework to FMLA retaliation claims.  <u>See</u> <u>Canada v. Samuel Grossi & Sons, Inc.</u>, 49 F.4th 340, 346 n.36 (3d Cir. 2022) (citing <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 302 (3d Cir. 2012)). But at the motion to dismiss stage in a FMLA retaliation case, Plaintiff only has "the initial burden of establishing a prima facie case":  "(a) invocation of an FMLA right, (b) termination, and (c) causation."  <u>Lichtenstein</u>, 691 F.3d at 302.  Because the first and second prongs are met here,[15] only the third prong is contested.  Applying the same framework here as the Court did with Plaintiff's Title VII and PHRA retaliation claims above in Section IV.B.3, Plaintiff has not established a <u>prima facie</u> case of FMLA retaliation because she fails to show a causal relationship between invocation of her FMLA rights and her termination.

Plaintiff does not allege whether she was exercising any of her twelve (12) weeks of unpaid medical leave as afforded under the FMLA at the time of her termination.  Rather, the Amended Complaint's only reference to her FMLA entitlements is its allegation that Plaintiff "was still under [intermittent] FMLA . . . at the time of termination, . . . which began December 2019 and . . . was due to end in December 2020."  (Doc. No. 9 at 3.)  The Amended Complaint contains no evidence

---

[15] To satisfy the first prong of FMLA retaliation—invocation—"employees must provide adequate notice to their employer about their need to take leave."  <u>Lichtenstein</u>, 691 F.3d at 303 (citing 29 U.S.C.§ 2612(e)(2)).  Because Defendant PHA granted her intermittent leave under the FMLA, Plaintiff is presumed to have provided notice of invocation of her FMLA benefits to Defendants.  With respect to the second prong, it is uncontroverted that Plaintiff was terminated on September 25, 2020.

other than the fact of her termination during her entitlement to intermittent FMLA leave and does not state whether she was actively on medical leave when she was terminated.  Likewise, Plaintiff does not allege plausible facts that Defendant terminated her as a result of her exercising her FMLA entitlements, which would establish the causation element.  Thus, Plaintiff's FMLA retaliation claim against Defendant PHA will be dismissed.

### B.  The Amended Complaint Will Be Dismissed Against Individual Defendants for Lack of Personal Involvement

Defendants Smith, McNeil, Bishop, Collins, and McQuoid (collectively "Individual Defendants") argue that Plaintiff's claims in this case should be dismissed against them for two reasons[16]:  (1) as to the Title VII claims, Title VII does not impose individual liability on the agents or employees of a defendant employer[17]; and (2) as to the balance of the federal claims, she fails to assert that they were personally involved in any of the allegedly actionable conduct.[18]  (Doc. No. 13-2 at 13-15, 31-33.)

In Evancho v. Fisher, the Third Circuit held that:

---

[16] Individual Defendants also argue that her claims should be dismissed against them because she failed to exhaust her administrative remedies by failing to name them in the body of the EEOC Charge.  See Dixon v. Phila. Hous. Auth., 43 F. Supp. 2d 543, 545 (E.D. Pa. 1999) ("A Title VII action ordinarily may be brought only against a party previously named in an EEOC action.") (citing 42 U.S.C. § 2000e-5(f)(1)).  However, while Individual Defendants may have been on notice of Plaintiff's discrimination allegations, given the impediments identified in the Amended Complaint, there is no need to extensively discuss this argument.

[17] In Emerson v. Thiel Coll., the Third Circuit reaffirmed that "individual employees are not liable under Title VII."  296 F.3d 184, 190 (3d Cir. 2002) (citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc)).

[18] Individual Defendants also claim that Plaintiff's claims should be dismissed because she failed to exhaust her administrative remedies by "fail[ing] to name the individually named Defendants" in the body of the EEOC charge.  (Doc. No. 13-2 at 14-15.)  However, the Court need not address this point since Plaintiff's claims will be dismissed for failing to allege Individuals Defendants' personal involvement in the acts alleged in the Amended Complaint.

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).
>
> . . .
>
> [A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible.  <u>Boykins v. Ambridge Area Sch. Dist.</u>, 621 F.2d 75, 80 (3d Cir. 1980) (citing <u>Hall v. Pa. State Police</u>, 570 F.2d 86, 89 (3d Cir. 1979)).

423 F.3d 347, 353 (3d Cir. 2005).  As noted above, Plaintiff raises many causes of action.  However, aside from naming the Individual Defendants in the heading of the Amended Complaint, Plaintiff does not identify any actionable conduct by the Individual Defendants.  In other words, the Amended Complaint does not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" since it does not allege which Individual Defendant engaged in which conduct.  <u>Iqbal</u>, 556 U.S. at 678.  Accordingly, since the Amended Complaint fails to allege facts that, if proven, show that the Individual Defendants were personally involved in the alleged wrongful conduct, all claims against them will be dismissed.  <u>Id.</u>

### C.  Plaintiff's Remaining State Law Claims Will Be Dismissed Because All Claims Over Which the Court Had Original Jurisdiction Are Being Dismissed

As noted in Section II, <u>supra</u>, Plaintiff has also alleged several causes of action under state law.  They are:  discrimination under the Pennsylvania Human Relations Act ("PHRA"); retaliation under the PHRA; hostile work environment under the PHRA; wrongful termination; breach of contract; and defamation.  Under 28 U.S.C.§ 1367, a district court may exercise supplemental jurisdiction over state law claims if it has jurisdiction over federal claims and if the state law claims "form part of the same case or controversy" as the federal claims.  28 U.S.C. § 1367(a).  However, because all of Plaintiff's federal claims are being dismissed and because this is not a case where the parties are citizens of different states for purposes of diversity of citizenship jurisdiction, this Court will decline to exercise jurisdiction over her state law claims.  <u>See id.</u> § 1367(c)(3)

(authorizing district courts to decline to exercise supplemental jurisdiction over state law claims if the "district court has dismissed all claims over which it has original jurisdiction"); see also Talley v. Wetzel, 15 F.4th 275, 281 (3d Cir. 2021) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).

Here, as a matter of judicial economy, convenience, and fairness to the parties, Plaintiff's state law claims are better suited for adjudication by Pennsylvania state courts. See Annulli v. Panikkar, 200 F.3d 189, 203 (3d Cir. 1999) (holding that "comity favor[ed] allowing the state court to hear [the plaintiff's] state law claims" where only pendent state law claims remained after dismissal of all federal claims). First, as to judicial economy, this Court's docket has a considerable number of federal cases over which it has jurisdiction. To preside over a case in which only state claims are alleged would have some burden on the federal court. No discovery has yet occurred in this case and it appears that the parties will engage in considerable litigation before this case is terminated. Simply put, there is no strong reason or federal policy to retain jurisdiction over the state law claims. Second, convenience to the parties would be a neutral factor. Finally, it would be unfair to Defendants to litigate state claims in federal court where there is no subject matter jurisdiction over those claims, and judicial economy compels that the state law claims be adjudicated in state court. Apart from the claims under the PHRA, which are being dismissed for the reasons noted above in discussing their analogous federal claims, the only claims that remain are wrongful termination, breach of contract, and defamation. These claims are suitable for adjudication in state court. In fact, Plaintiff has pending in state court a lawsuit against PHA and

the claims raised in that case appear to be the same as the claims raised in this federal case.  (See Doc. No. 35-1 at 9.)  Therefore, considering 28 U.S.C. § 1367(c)(3) and the interests of judicial economy, convenience, and fairness, Plaintiff's remaining state law claims also will be dismissed.[19]

One final reference must be made about the Family Self-Sufficiency ("FSS") Program, which is extensively described above and which Plaintiff heavily relies upon in her Amended Complaint.  Although it is difficult to decipher to which claim the FSS Program relates, it appears that the breach of contract claim is the one in which she alleges that PHA caused her to lose her benefits under this Program.  However, no contract has been produced in this case and, therefore, this claim has been insufficiently alleged.

### D.    Amendment of the Complaint Is Futile

After Plaintiff filed her initial Complaint, she "was put on notice as to the deficiencies in [her] complaint," was given specific instructions on how to amend it to survive dismissal, "but chose not to resolve [the deficiencies]."[20] United States ex rel. Schumann v. AstraZeneca Pharms. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (quoting Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002) (citations omitted)).  She filed an Amended Complaint which contained only general or conclusory allegations and was afforded several occasions to file a

---

[19]  In Dirauf v. Berger, the court noted that although it is "prefer[able for a] district court to state its basis for dismissing state claims," it is not required when dismissal is based on 28 U.S.C. § 1367(c)(3).  No. 21-1044, 2022 WL 17972518, at *4 (3d Cir. Dec. 28, 2022) (quoting Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 181 (3d Cir. 1999) (citation omitted)).  Moreover, there is a presumption that a district court should decline to exercise supplemental jurisdiction if it has dismissed all original-jurisdiction claims.  Id. at *4 n.6.  It is a presumption and not a rule. Id.

[20]  In the Order dated October 4, 2022 (Doc. No. 37), which is quoted supra in footnote 5, the Court detailed the many opportunities it provided Plaintiff to amend the Complaint or to find legal representation in this case.  She did not do so.

Second Amended Complaint and failed to comply with the deadlines.  Because there is no reason to believe that Plaintiff can allege plausible facts, it would be futile to allow her to file another amended complaint.  Consequently, leave to file another Complaint will be denied.

**V.      CONCLUSION**

For the foregoing reasons, the Motion to Dismiss (Doc. No. 13) will be granted and all claims against Defendants PHA, Smith, McNeil, Bishop, Collins, and McQuoid will be dismissed with prejudice.  An appropriate Order follows.